ARTHUR HOLLAND ET AL. V. M. L. NANCE ET AL.

No. 1843. Decided December 16, 1908.

**1.—Limitation—Adverse Possession.**

To constitute adverse possession it must be taken and held with the intention to claim the land so occupied. (P. 183.)

**2.—Same—Inclosure by Mistake of Boundary.**

Where an owner, in enclosing his land, extended his fence, by mistake as to the boundary line, so as to include a portion of an adjoining tract which he had no intention of claiming, no adverse possession thereof was acquired beyond the limits of his enclosure. (Pp. 182–184.)

**3.—Same—Registered Deed.**

A land owner, finding that he had extended his enclosure by mistake so as to include in the land fenced and cultivated by him a strip varying from 1½ to 18 varas in width and covering about an acre and a half of the land of an adjoining proprietor, obtained and placed on record a deed to such adjoining tract from a third party, not shown to have any title, for the purpose of claiming limitation to the boundaries in such deed by virtue of his possession of the strip enclosed. Held, that the extent of his adverse possession was not changed by the recorded deed and was restricted to the limits of his enclosure. (Pp. 182–184.)

**4.—Administrator's Sale—Collateral Attack.**

Where it appears that the County Court had jurisdiction to grant letters of administration and order the sale of land its orders were not subject to collateral attack. (P. 185.)

**5.—Administrator's Sale—Innocent Purchaser—Unrecorded Deed—Notice by Record.**

A purchaser from the heirs of one residing and dying in another State was not charged by the record with notice of sale under administration proceedings in Texas, in a county other than that in which the land was situated, when the administrator's deed was not recorded. (P. 185.)

**6.—Unrecorded Deed—Innocent Purchaser—Payment of Consideration—Evidence.**

Evidence considered and held sufficient to support a finding, based on

circumstances of recited payment, long claim under the deed, absence of adverse claim, and death of the parties to the transaction, that a purchaser of land was to be protected against an unrecorded deed as one buying in good faith without notice and paying a valuable consideration. (Pp. 185, 186.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Madison County.

Actions separately brought by Ella C. B. Ferris and others and by Arthur Holland and others against M. L. Nance and others were consolidated and tried together. Judgment was in favor of Ferris and others, and on appeal by defendants and by Holland and others it was reversed and rendered in favor of Nance and Holland. Writs of error were obtained on separate applications by Mrs. Ferris and her co-plaintiffs and by Holland and others.

*Dean, Humphrey & Powell* and *Blake, Jackson & Berry,* for plaintiff in error Holland.—The Court of Civil Appeals erred in holding that the undisputed evidence shows that the possession by Nance of the 357 acres of land in controversy was adverse from and after the execution and registration of the deed to him from the heirs of C. J. Shepherd. Tucker v. Smith, 68 Texas, 481; Bracken v. Jones, 63 Texas, 184; Blassingame v. Davis, 68 Texas, 598; Evitts v. Roth, 61 Texas, 81; Claiborne v. Elkins, 79 Texas, 380; Chance v. Branch, 58 Texas, 490; Angell on Limitations, sec. 384; Gillespie v. Jones, 26 Texas, 279; 1 Cyc., 1037; White v. McGregor, 92 Texas, 857; Smith v. Smith, 23 Texas Civ. App., 304; Oppenheimer v. Robinson, 87 Texas, 174; Runge v. Gilbough, 87 S. W., 832.

The administration proceedings of the estate of E. Latham were not void, and have never been set aside in any proceeding instituted to that end, and should be held to be conclusively valid and binding against the attacks made upon said administration proceedings in this action. Guilford v. Love, 49 Texas, 715; Miller v. Foster, 76 Texas, 479; Lawson v. Nelly, 82 Texas, 462; Heath v. Garrett, 50 Texas, 268; Fitch v. Boyer, 51 Texas, 344; Johnson v. Wilcox, 53 Texas, 421; Jack v. Cassin, 9 Texas Civ. App., 228; Murchison v. White, 54 Texas, 82; Heath v. Layne, 62 Texas, 691; Gillenwaters v. Scott, 62 Texas, 673; Tom v. Sayers, 64 Texas, 343; Martin v. Robinson, 67 Texas, 374; Bouder v. Schluter, 78 Texas, 106. Especially applicable to the order of court appointing administrators de bonis non: Williams v. Howard, 10 Texas Civ. App., 527; Halbert v. De Bode, 15 Texas Civ. App., 615; Strickland v. Sandmyer, 21 Texas Civ. App., 351.

In the absence of proof of the payment of the purchase money, and the further proof of the death of the parties to the original transaction, the court had no right to reverse the rule requiring a party claiming to be an innocent purchaser in good faith for value, to prove the want of notice, and to presume in favor of such party the want of notice. Watkins v. Edwards, 23 Texas, 447; Hawley v. Bullock, 29 Texas, 224; Hamman v. Keigwin, 39 Texas, 42; Lindsey v. Freeman, 83 Texas, 267.

The law imposes upon the parties asserting rights as or under an innocent purchaser in good faith for value, against the holder of the

superior legal title, the burden of proving by evidence aliunde the recitals in the deed to the party claiming to be such innocent purchaser in good faith for value, the payment in fact of value for the land. Watkins v. Edwards, 23 Texas, 447; Rodgers v. Burchard, 34 Texas, 224; Lindsey v. Freeman, 83 Texas, 267; Robertson v. McClay, 19 Texas Civ. App., 513.

*J. M. Brownlee* and *C. E. Gustavus,* for plaintiffs in error Ferris et al.—The administration being without authority of law, illegal, and void, all the proceedings had thereunder were void, and the purchaser of the land in controversy, under sale by said administrator, acquired no title, which fact may be shown in this action. Hart. Dig., art. 1162; Pasch. Dig., art. 1313; Wardrup v. Jones, 23 Texas, 489; Withers v. Patterson, 27 Texas, 491; Lindsay v. Jaffray, 55 Texas, 637-638; Paul v. Willis, 69 Texas, 266; Summerlin v. Rabb, 11 Texas Civ. App., 53; Marks v. Hill, 46 Texas, 345; Templeman v. Falls Land & Cattle Co., 77 Texas, 58; Branch v. Hanrick, 70 Texas, 734; Houston v. Killough, 80 Texas, 296; Buchanan v. Park, 36 S. W., 807. No claim for money to be allowed unless properly proved in writing. Hart. Dig., art. 1158.

The entire administration proceedings, including the appointment and acts of J. De Cordova, as administrator de bonis non, were void for want of jurisdiction in the probate court, from the beginning of the administration under said Sleight, in 1838, and appellants acquired no title to the land in controversy through sale to N. Holland by J. De Cordova as such administrator, because said Latham was alive when said administration was originally granted to said Sleight and did not die for several years thereafter. Said administration was ab initio void for the further reason that Enoch Latham did not reside in this State at the time of his death, and did not die in Austin County, and the probate court of that county was without jurisdiction over his estate, all of his property being in Montgomery County, as the administration proceedings affirmatively show. Withers v. Patterson, 27 Texas, 497; Martin v. Robinson, 67 Texas, 368; Jones Lumber Co. v. Rhodes, 17 Texas Civ. App., 665; Pleasants v. Duncan, 47 Texas, 355; Copelin v. Compton, 5 Texas Civ. App., 414; Buster v. Warren, 35 Texas Civ. App., 644; Scott v. McNeal, 154 U. S., 34. Applicable where decedent resided in another State, etc. Hart. Dig., 1110; Hearn v. Camp, 18 Texas, 546; Paul v. Willis, 69 Texas, 266; Templeman v. Falls Land & Cattle Co., 77 Texas, 58.

The court did not err in concluding that L. D. Bragg purchased the land in controversy, and paid a valuable consideration therefor, without notice of appellants' title, if they had any title. Administration proceedings are not notice, even in the county where pending, until recorded upon the deed records. The recitals as contained in the deeds which constitute appellees' chain of title being ancient instruments, are prima facie proof of what they show. The apparent legal title, if not the legal title, being held by appellees, the burden is upon appellants to prove that L. D. Bragg and also R. W. Hargrove were not purchasers for value without notice. The rule would be the same whether they held the legal or the apparent legal title.

Rev. Stats., arts. 4640, 4641, 4642. Administration proceedings in one county do not serve notice to purchaser of land situated in another county. Thompson v. Rusk, 74 S. W., 924; Allen v. Atchison, 26 Texas, 616; Corley v. Renz, 24 S. W., 936.

Burden of proof rests on appellants to show that L. D. Bragg and R. W. Hargrove were not bona fide innocent purchasers for value, the apparent legal title, if not the legal title, to the land in controversy, being in appellees. Peterson v. McCauley, 25 S. W., 829; Johnson v. Newman, 43 Texas, 628; Lewis v. Cole, 60 Texas, 341; Hill v. Moore, 62 Texas, 610; Kimball v. Houston Oil Co., 100 Texas, 336 (approves Johnson v. Newman, supra); La Pice v. Caddenhead, 21 Texas Civ. App., 363; Herrington v. Williams, 31 Texas, 448. Ancient instruments prove themselves and what they recite. Folts v. Ferguson, 24 S. W., 657; Byers v. Thacker, 42 Texas Civ. App., 492; Veramendi v. Hutchins, 48 Texas, 552; Harrison v. McMurray, 71 Texas, 122; McCamant v. Roberts, 80 Texas, 316.

The patent to the heirs of Enoch Latham vested in them the legal title to the land in controversy, and they not having been made parties to the administration proceedings, the legal title was not divested, and N. Holland, under his purchase, acquired only an equitable title, and in this suit the burden was on the appellants to prove that L. D. Bragg did not pay value for said land, and had notice of the title claimed by appellants. Herrington v. Williams, 31 Texas, 448. On burden of proof and equitable title: Johnson v. Newman, 43 Texas, 628; Kimball v. Houston Oil Co., 100 Texas, 336 (approving Johnson v. Newman); Mitchell v. Bass, 26 Texas, 376; League v. Rogan, 59 Texas, 427.

*Randolph & Randolph,* for defendants in error.—Actual possession of a part of the tract extends by construction to the whole thereof as described in the deed to same, and to support the five years' statute of limitation the possession must be peaceable, continuous and adverse. Bronson v. Scanlan, 59 Texas, 222; Neyland v. Texas Yellow Pine Lumber Co., 26 Texas Civ. App., 417; Sparks v. Hall, 29 Texas Civ. App., 177; Craig v. Cartwright, 65 Texas, 421; Tarlton v. Kirkpatrick, 1 Texas Civ. App., 107; Talliaferro v. Butler, 77 Texas, 578; Brown v. O'Brien, 11 Texas Civ. App., 459; Hodges v. Ross, 6 Texas Civ. App., 437; Ramirez v. Smith, 94 Texas, 184.

Adverse possession coupled with the cultivation, use or enjoyment by party under a deed duly registered embracing the land claimed and the payment of taxes by him during the period required, supports the plea of the five years' statute of limitation. Rev. Stats., art. 3342; Adkins v. Galbraith, 10 Texas Civ. App., 175; Converse v. Ringer, 6 Texas Civ. App., 51.

The question of adverse possession, under the undisputed facts here presented, was one of law. Link v. Page, 72 Texas, 529; Bowles v. Brice, 66 Texas, 731; Texas & M. Ry. Co. v. Uribe, 85 Texas, 388; Boone v. Hulsey, 71 Texas, 191; Hussey v. Moser, 70 Texas, 45; Baker v. Light, 80 Texas, 634; Gilbough v. Runge, 99 Texas, 539.

It would, it seems to us, have been an error to submit to the jury

the legal effect of recording the Sheppard heirs' deed. That position, we think, is further sustained by the cases of Ivy v. Williams, 78 Texas, 687; Cook v. Denis, 61 Texas, 249; Sheppard v. White, 11 Texas, 358; San Antonio v. Lewis, 9 Texas, 70, 71.

The Court of Civil Appeals arrived at the correct conclusion of law from the facts, as to the adverse nature of the possession. Brownson v. Scanlan, 59 Texas, 222; Bracken v. Jones, 63 Texas, 184; Taliaferro v. Butler, 77 Texas, 578, 9 S. W., 567; Tarlton v. Kirkpatrick, 1 Texas Civ. App., 107; Texas & P. Ry. Co. v. Maynard, 51 S. W., 255; Porter v. Miller, 79 Texas, 413; Simpson v. Johnson, 92 Texas, 159; McCarty v. Johnson, 20 Texas Civ. App., 184.

When Nance registered his deed from the Sheppard heirs he notified the plaintiffs in error in the most unmistakable manner of his purpose to become the owner of the Latham survey. As poetically expressed in Cook v. Dennis, 61 Texas, 248, from that time on he kept "his own flag flying" and was no longer making "port by sailing under colors of another." It is probably needless to lay further stress upon the effect of registration as notice. This view is well accented in the cases of Harris v. Wells, 85 Texas, 314, 315; Fly v. Baker, 59 Texas, 404; Hunter v. Nichols, 55 Texas, 230; Flannagan v. Boggess, 46 Texas, 335; Bowles v. Brice, 66 Texas, 730; Schleicher v. Gattling, 85 Texas, 276-278; Kilpatrick v. Sisneiros, 25 Texas, 136.

M<small>R</small>. J<small>USTICE</small> B<small>ROWN</small> delivered the opinion of the court.

This is a controversy over a tract of land patented to Enoch Latham in which three conflicting titles are asserted. One, which proceeded out of the patentee's estate through an administrator's sale, is asserted by Arthur Holland and Mary Louise Morris. Another emanates from the heirs of the patentee through a conveyance made by them after the administrator's sale, and is asserted by Ella C. Bragg Ferris, Fannie Greye Bragg Geissler, and Mary Pearl Meyer. The third is the claim of the parties in possession, of title by limitation under the five years statute and under deeds from persons claiming through Latham, the patentee, who were not shown to have had any chain of title connecting them with him.

The District Court held that the title of Mrs. Ferris and others, claiming through the heirs of Latham, was superior to that of the claimants under the administrator's sale, and, also, that the defendants' plea of limitation was not sustained. Judgment was therefore rendered in favor of Ferris, Geissler, and Meyer against all of the other parties. The Court of Civil Appeals held that in both the holdings stated the District Court erred; that the title of Arthur Holland and Mary Louise Morris was superior to that of Mrs. Ferris and others; but that defendant Nance had maintained his plea of limitation as to all the 357 acres in controversy except 36 acres claimed by Tinsley, who failed in all of his defenses. Judgment was accordingly rendered in favor of Holland and Morris for the 36 acres claimed by Tinsley, and in favor of Nance for the remaining 321 acres.

The opinions of the Court of Civil Appeals are reported in 107

S. W., 102, Holland v. Ferris, and contain a fuller statement of the case and of the various questions involved.

Two applications for writs of error were presented to this court, one in favor of Mrs. Ferris and her coplaintiffs, and the other in favor of Arthur Holland and Mary Louise Morris, and, as it was thought there was error in the judgment of the Court of Civil Appeals upon the question of limitation, both were granted.

Nance's defense of limitation is based upon the following facts. He owned the Bowman survey which adjoined the Latham on the west. In improving his land on the Bowman he enclosed a field, intending to place his eastern fence upon the line between it and the Latham. By mistake the fence, which was not entirely straight, was made to encroach upon the Latham tract, so that at one point it was eighteen varas, at another one and one-half varas, and at others distances varying from five to seven varas across the line, thus enclosing about an acre and a half of the Latham survey, which thereafter was cultivated as a part of the Nance field. Only in this way was any possession of the land in controversy ever taken as long as five years before the institution of the suit, and prior to 1897 Nance had asserted no claim to any part of it. The evidence adduced by him was sufficient to warrant a finding that in that year he learned that his fence was over the line; that he then obtained a deed for the entire Latham survey from persons before alluded to as claiming to own but having no title to it, which he at once placed upon record; and that since that time he has claimed the entire tract, under that deed in connection with such possession as he had as just stated. The conclusions of the trial judge for reasons stated therein are not very specific upon the questions of fact upon which the defense of limitation depends. Among his conclusions of fact is the following statement: "Nance, intending to put his fence line on the line between the Bowman and the Latham surveys, he owning the Bowman or a part of it, unintentionally got over at one point about 18 varas, at another point about a vara and a half, and at other points varying distances from 5 to 7 varas, so that he included about an acre and a half of the Latham land, and he made the trade with the attorney of the Sheppard heirs and got a deed, and perhaps gave his note, but has never paid anything on the land, and did not extend his fence over the Latham line until February, 1900. It was shown very clearly that the defendant Nance purchased with a view of paying the taxes and recording his deed and holding the land under the five years statute, and that evidently, while he bought in good faith in the sense that he desired to get the land, he knew that his title was doubtful and that the Braggs were claiming it, as their deed had been of record for many years." In his conclusions of law occurs the following: "Taking them in adverse order I may state that neither Nance nor Tinsley can claim title by limitation. It was clearly shown that Nance had no intention of enclosing any of the Latham survey, but that the acre and a half he did enclose was purely accidental, and that even after he made the trade for the land in controversy, he never extended his fence to cover it, and as the facts proven as to his claim and possession will not support the five

years statute of limitation, neither he nor Tinsley can recover and judgment will be against them."

The Court of Civil Appeals held that the facts thus found by the trial judge, coupled with the undisputed proof of cultivation of the enclosed acre and a half and payment of taxes by Nance, established the defense of five years limitation. As we understand the opinion of the court on motion for rehearing, it simply holds that the conclusion of law of the district judge against the claim of adverse possession was incorrect, and does not hold that any finding of fact was unsupported. The question for our decision, therefore, is whether or not title by limitation results as a matter of law from the facts stated by the trial judge and the further undisputed facts of cultivation and payment of taxes.

The character of possession which is necessary to sustain the statute of limitation for either of the three periods is expressed in articles 3340, 3342, and 3343 to be "peaceable and adverse possession." To constitute adverse possession it must be taken and held with the intention to claim the land so occupied. (Schleicher v. Gatlin, 85 Texas, 270; 1 Am. & Eng. Ency. Law, p. 791, and authorities in the note; Caufield v. Clark, 11 Am. St. Rep., 845; Winn v. Abeles, 35 Kans., 85.)

Where a party, through mistake, as in this case, includes within an enclosure a portion of an adjoining tract, not intending to claim adversely to the owner thereof, such possession does not extend to the portion not included, and the continuance of such possession for any length of time will not give, by limitation, title to the land not embraced in the enclosure: Bracken v. Jones, 63 Texas, 184; Titel v. Garland, 99 Texas, 201; 1 Am. & Eng. Ency. Law, 791.

Nance testified that when he built his fence he intended to put it upon the line between the Bowman and Latham surveys, and that he thought he was upon the line until about the year 1897, when he discovered that he had included in his enclosure a small portion of the Latham survey. Up to that time there can be no pretense that the statute of limitation had run in favor of Nance for any portion of the Latham survey not embraced within his field; but in 1897, when he learned that his fence was not exactly on the line he procured a deed from some parties who really had no title to the land, conveying to him the Latham survey, and he placed that deed upon record and paid taxes on the land up to the time of the trial. It is claimed for Nance that from that time the statute began to run in his favor for the entire survey, and that the five years having elapsed before the institution of the suit, the claim of the plaintiffs was barred by the statute of limitations. Possession of Nance was not changed after he put his deed upon record. He says in his testimony that he did not enclose any more of the land until the year 1900. The possession of Nance prior to the recording of the deed did not extend beyond his fence, and it is difficult to see how the recording of his deed would enlarge his possession. The record of a deed does not constitute possession of the land, and, in fact, is not notice of possession. When a party has actual possession of a portion of a tract of land and has a deed for it upon record, that record is notice to

all those who claim in opposition to him as to the character of his claim and the extent of it, but without possession adverse owners are not charged with notice of the fact that the deed is upon record or that any claim is made to the land. Before Nance procured the deed and placed it upon record, his possession meant to the true owner of the Latham survey that Nance was claiming nothing beyond his fence. After the recording of the deed the possession was the same and gave no notice of a greater claim. In Bracken v. Jones, cited above, the court said: "It can scarcely be said that in such a case as the present the possession is notorious, visible and distinct, so as to fulfill the requirements of the ten years' section of the statute of limitation. Whilst the true owner is chargeable with a knowledge of the boundaries of his land, he can hardly be affected with notice that a neighbor who has encroached a few feet upon his tract is doing so for the purpose of acquiring title to six hundred and forty acres of it. He would rather impute it to a mistake on the part of the apparent trespasser as to the division line between them. Whilst this might not excuse the party trespassed upon for not asserting his right to the land actually occupied by the trespasser, it would certainly save him from such consequences as the loss of a section of his land. The party encroaching would be entitled to no more than the land actually occupied by him."

In Titel v. Garland, 99 Texas, 201, a party who had settled upon what was known as section 22 of a survey of land, by mistake enclosed 12 acres of quarter-section 21. At the time he made the settlement and the enclosure he believed that the 12 acres was a part of section 22. Subsequently a survey of the two sections was made, and it was disclosed that the 12 acres was a part of quarter-section 21. After he discovered the mistake he did not change his fence in any way, but continued to occupy and cultivate the 12 acres on quarter-section 21 as before, intending to claim 160 acres of the land in that quarter-section. This court held that possession thus taken and held by the party did not constitute adverse possession. Upon this point Judge Gaines said: "It is clear that up to this time he claimed no land except such as he thought was embraced in section 22. His claim, so far as the evidence discloses, was a mere mental process, known only to himself. There were no 'external circumstances discovering that inward intention.' It would seem that when one proposes to hold the land of another, which he has never occupied nor enclosed, 'by virtue of the statute of limitations, it should appear that he has exercised some acts of ownership over some definite part thereof calculated to apprise the owner that he is asserting 'a claim of right' thereto, and the extent of that claim." Nance did no act which would notify the owners of the Latham survey that he had changed his mind and was claiming the entire tract. The action against Nance was not barred.

Nance relied upon a grant of eleven leagues of land said to have been made to Jose Miguel Musquis, which was extended in 1831, as an outstanding title, but it does not appear from the statement of facts by whom the grant was made nor in what right it was made. This evidence is not sufficient to show that the grant offered consti-

tuted a valid outstanding legal title in the persons who were claiming under the Spanish grant. The evidence is so meagre that we will not undertake to pass upon the validity of the grant, but will simply say that the Court of Civil Appeals correctly held that it was not proved to be a valid outstanding legal title, and therefore constituted no defense to the plaintiffs' action.

It is claimed that the sale made by DeCordova, as administrator of the estate of Latham, was a nullity; but it appears from the record that the County Court of Austin County had jurisdiction to grant the letters of administration to DeCordova, and also to order the sale of the land. Such orders of the County Court are not subject to collateral attack. Martin v. Robison, 67 Texas, 368; Crawford v. McDonald, 88 Texas, 626.

The effect of the sale by the administrator to Holland was to pass to him the title vested in the heirs by the patent, and those who claim under Holland are entitled to recover unless the subsequent purchaser, Bragg, bought in good faith without notice and for a valuable consideration paid. The deed of the administrator to Holland was not recorded in Madison County until after Bragg had purchased the land, and there was no evidence, outside the deed and the attending circumstances, which bears upon the question of the payment of the purchase money or actual notice of the existence of the deed to Holland. The evidence shows that Latham died in Louisiana, where he resided, and administration upon his estate was had in Austin County, Texas. Under these facts the proceedings in the Probate Court did not give notice to the purchaser from the heirs of the sale to Holland.

Ordinarily, one who seeks to postpone a prior unregistered deed must prove that he paid the purchase money for the land without actual notice of the existence of the prior deed. But this may be established by circumstances. These facts are relied upon to prove the payment of the purchase money: Bragg purchased the land in 1860 from a party who bought it in 1855. The deed from the heirs of Latham to Hargrove was dated in 1854 and was recorded in Madison County in 1856, and payment of the purchase money was acknowledged. Bragg's deed from Hargrove was dated January 25, 1860, and was recorded in Madison County, February 17, 1860, payment of the purchase money was acknowledged; and the proof showed that he and those who claimed under him have asserted title to the land from that time down to the time of the trial, paying taxes thereon since 1887, while, on the other hand, there had been no record of the antagonistic title and no assertion of claim by any of the parties under Holland until the 16th day of February, 1903, a few months before the institution of this suit. Bragg is shown to have died twenty years before suit was filed. Nothing appears in the evidence concerning Hargrove. His death might be presumed from the length of time that has elapsed, since the record fails to show any trace of him. We are of opinion that under such circumstances a jury might find, as did the trial court in this case, that Bragg paid the purchase money when he bought the land and that he had no notice of the title acquired by the purchase from the ad-

ministrator of Latham.    Rogers · v. Pettus, 80 Texas, 428; Dean v.
Gibson, 34 Texas Civ. App., 508; Weems v. Masterson, 80 Texas, 45.

It is‾ ordered that the judgments of the District Court and Court
of Civil Appeals be reversed and this cause be remanded.

*Reversed and remanded.*

Associate Justice Williams did not sit in this case.