## SMITH v. ALEXANDER GILMER LUMBER CO. (No. 751.)

. (Court of Civil Appeals of Texas. Beaumont. April 25, 1922. Rehearing Denied June 28, 1922.)

**1. Adverse possession ⬦⬦31—Unchanged holding of small tract held not constructive possession of larger tract of which it was part.**

W., having a deed to 160 acres of a survey executed by one whom he knew had no title, put S. in possession thereof as his tenant, to acquire title, and S., on the survey, erected a dwelling and a barn and made a main clearing near the house and barn, and also two others of 4 and 2 acres respectively, further away. The owner of the survey sued W. and S. and others in trespass to try title; S. defaulted; W. was awarded 80 acres; and the remainder, except portions awarded other defendants, was awarded the owner. W.'s 80 acres was surveyed to include the house, improvements and main clearing, but not the 4 and 2 acre clearings. W. conveyed to S. a tract of 35 of the 80 acres which included the house, improvements, and main clearing. *Held* that, under Vernon's Statutes, art. 5681, the continued cultivation thereafter by S. of the 4 and 2 acre clearings, claiming them as his own, without substantial or material change in his use or inclosure of them, was not sufficient to give notice to the owner of his claim of ownership rather than tenancy so as to be a basis for claim of title to 160 acres of the survey outside his 35-acre tract, such possession and use of the 4 and 2 acre tracts being merely incidental to his main possession and occupancy of his 35-acre tract, so that the encroachment doctrine applied.

**2. Adverse possession ⬦⬦97—Limitation cannot run against owner in favor of trespasser except as to part inclosed.**

Where the true owner of land enters thereupon by actual possession, or remains in possession, either by himself or through his agent or tenant, such entry and actual possession gives him the constructive possession also, and the possession of any mere trespasser or occupant on the land is confined to so much thereof as such trespasser or occupant has actually inclosed.

**3. Adverse possession ⬦⬦112—One claiming by constructive adverse possession has burden of proving that record owner's lease was restricted lease.**

One claiming title by constructive adverse possession to a tract had the burden of proving that the contract of tenancy between the record owners and their lessee was a restricted lease; otherwise such claimant's possession would be confined, as a matter of law, to his actual possession of so much of the land as he had actually inclosed.

Appeal from District Court, Newton County; V. H. Starke, Judge.

Action by the Alexander Gilmer Lumber Company against C. W. Smith in trespass to try title. From a judgment for plaintiff, defendant appeals. Affirmed.

Wightman & Forse, of Newton, and Smith & Crawford, of Beaumont, for appellant.

Holland & Holland, of Orange, for appellee.

HIGHTOWER, C. J. This was an action of trespass to try title brought by the appellee, Alexander Gilmer Lumber Company, against appellant, C. W. Smith, to recover two small tracts of land, same being part of the Stephen Williams 640-acre survey in Newton county, the two tracts being described separately, and aggregating about 8 acres.

Smith answered by a general denial and plea of not guilty, and, in addition, filed a cross-action, by which he claimed an undivided 160 acres of said Williams survey under the 'statute of 10 years' limitations.

A jury was taken in the case, but, after the evidence was closed, the court peremptorily instructed a verdict in favor of the plaintiff, Alexander Gilmer Lumber Company, the appellee. After his motion for a new trial had been overruled, appellant, Smith, duly prosecuted an appeal to this court, and has challenged the action of the trial court in instructing the verdict against him by two assignments of error. These assignments raise practically the same question, and the several propositions under them raise practically one and the same question.

It was agreed upon the trial below that the appellee was the owner of all the land here in controversy, and entitled to recover same unless defeated by appellant's plea of limitation of 10 years. By the assignments of error, appellant complains, substantially, that the evidence adduced upon the trial showed, conclusively, that he had ·had and held peaceable and adverse possession of the land in controversy for a period of more than 10 years before appellee filed this suit against him, and that therefore he was entitled, as a matter of law, to recover judgment against appellee for 160 acres of land, as claimed by him in his answer, etc. But, if mistaken in this, then he claims that the evidence adduced upon the trial was sufficient to warrant a finding by the jury in his favor that he had had and held peaceable and adverse possession of the land in controversy for a period of more than 10 years before this suit was filed against him, and that the trial court was therefore in error in taking such issue of fact from the jury by the peremptory instruction.

The material facts bearing upon appellant's claim of limitation are, substantially, as follows:

On June 24, 1901, one D. V. Smith, who had no title, executed a deed to one J. W. Weaver for 160 acres of land, a part of the

---

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Stephen Williams survey in Newton county; the deed describing the land by specific metes and bounds. Weaver, knowing that he acquired no title to the land under the deed from Smith, in the fall of 1902 put O. W. Smith, who is the appellant in this cause, in possession of the land described in Weaver's deed from D. Y. Smith, with the understanding between them that C. W. Smith should be Weaver's tenant; it being the intention of the parties ·that Weaver should acquire in this way title to the 160 acres of land described in his deed from D. V. Smith by limitation. Immediately after taking possession for Weaver of this 160 acres of land, C. W. Smith commenced improving the same by clearing fields thereon and constructing buildings thereon. He built a dwelling house, a barn, and perhaps other outhouses, and cultivated the land that he cleared. The cleared land was not all in one place, or contiguous, and the main clearing or field was near the house where Smith lived and where the other improvements were, but he also cleared up a small patch or field consisting of about 4 acres in another place included within the description of the 160-acre tract in the D. V. Smith deed to Weaver, and also another small tract, consisting of about 2 acres, included within the description of said deed. All these improvements by C. W. Smith, as Weaver's tenant, were made prior to 1907.

Some time during the year 1907, Jesse H. Jones, who was the owner of the Stephen Williams 640-acre survey, filed suit in the district court of Newton county in trespass to try title against J. W. Weaver, D. V. Smith, George R. Weaver, and several other defendants, including C. W. Smith, appellant in this cause. We infer from the record that Jesse H. Jones died after said suit was filed, and his executors were permitted to prosecute the same as plaintiffs in his stead. In the Jones suit, appellant here, who was one of the defendants, although duly cited, filed no answer, and did not appear in any manner in that cause, and judgment in that cause was rendered against him in favor of the plaintiffs for the title and possession of said Stephen Williams 640-acre survey. J. W. Weaver and D. V. Smith and George R. Weaver did appear and answer as defendants in the Jones suit, and each of these defendants was awarded by the judgment in that suit, rendered March 9, 1909, certain portions of the Williams survey. There was awarded by the judgment to J. W. Weaver a tract of 80 acres described by metes and bounds, and there was awarded to D. V. Smith three separate tracts, one of 30, another of 18, and another of 3½ acres, described by metes and bounds, and there was awarded to George R. Weaver a tract of 45 acres described by specific metes and bounds. All of the remainder of the Williams survey of 640 acres was awarded by the judgment

in that cause to the plaintiffs in that cause as against all defendants therein.

Immediately or very shortly after the judgment in the Jones suit J. W. Weaver caused the 80-acre tract recovered by him to be surveyed, and as surveyed the patch or little field of 4 acres above mentioned was not included within the 80-acre tract; neither was the 2-acre patch or garden included within the 80-acre tract. The 4-acre patch or field was left by the survey some 53 steps south of the south line of the 80-acre tract, as awarded by the judgment in the Jones case to J. W. Weaver, and the 2-acre patch or garden was some 20 or 30 steps beyond the bounds of the 80-acre tract awarded to Weaver. When C. W. Smith, the appellant here, was notified by Weaver, right after the disposition made of the Jones suit, of these facts, he asked Weaver, according to his testimony on this trial; what he, Weaver, intended to do with the little 4-acre field above mentioned, and Weaver replied that he did not intend to do anything with it, and, substantially, that Smith might do with it as he pleased. Smith thereupon replied, according to his testimony on this trial, that he would set up a claim to this 4-acre field and would continue to claim it and cultivate it, and try to acquire title to 160 acres more of the Williams survey for himself.

At the time C. W. Smith went into possession of the 160 acres described in the deed from D. V. Smith to J. W. Weaver above mentioned, in the fall of 1902, as the tenant of J. W. Weaver, it was understood between him and Weaver that in the event Weaver should acquire title to the same, or any portion thereof, under his claim of limitation, then Weaver was to convey to C. W. Smith a portion of the land that he should so acquire. In keeping with this agreement and understanding between Weaver and C. W. Smith, Weaver did, in February, 1910, make a deed to C. W. Smith for 35 acres of land, all of which was included within the 80 acres awarded by the judgment in the Jones case to Weaver. This 35 acres was described by metes and bounds in the deed from Weaver to C. W. Smith, and was promptly placed of record in Newton county, and C. W. Smith, in this transaction, got the dwelling house and other improvements which had been erected when he went into possession for Weaver, and the main field which he had cleared as tenant for Weaver, all of this being upon the 35 acres as described in his deed from Weaver. Thereafter C. W. Smith continued to live in this same house, and continued to cultivate the cleared land that he had acquired by his deed from Weaver, and also continued to cultivate each year the 4-acre patch of field above mentioned and the 2-acre garden patch above mentioned. The evidence found in the record was sufficient to warrant a finding by the jury

that after Weaver told appellant, in the spring of 1909, that he (Weaver) would no longer make claim to the 4-acre patch or 2-acre patch, but would only thereafter claim the 80 acres awarded to him in the Jones case, appellant began to claim the 4-acre field and the 2-acre garden patch as his own, and continued to claim the same as his own until the filing of this suit against him, which was on July 30, 1919; and the evidence was also sufficient to warrant a finding by the jury that appellant, during said period of time, cultivated the little 4-acre field and the 2-acre garden patch each year; and it was also sufficient to warrant a finding that during said period of time and while cultivating these two patches appellant was claiming 160 acres undivided on the Williams survey, entirely without the bounds of the 80-acre tract awarded to Weaver in the Jones case, and, of course, entirely beyond the bounds of his 35-acre tract as described in his deed from Weaver. The evidence is undisputed, however, that there was no substantial or material change as to appellant's use of the 4-acre patch or the 2-acre garden at any time during said period, and no character of possession was taken of either of said small tracts by appellant, other than his cultivation of the same, and no buildings or structures of any nature were placed thereupon. There was no change whatever in the fence around the 4-acre patch from what it had been before the Jones judgment, nor was there any substantial or material change in regard to the fence around the 2-acre garden; and there was nothing whatever, according to the undisputed evidence in the record, to indicate to the true owner of the Williams survey, upon which these two small patches were located, that appellant was setting up title thereto, further than might be indicated by appellant's cultivation of them, as before stated. Such inclosures as were around these two small tracts were placed there prior to the judgment in the Jones case.

After appellant got his deed for his 35 acres from Weaver, before mentioned, he commenced to assess the same for and to pay taxes thereon, and continued the payment of taxes thereon; and later he bought an additional 30 acres of land from D. V. Smith (presumably the same 30-acre tract that was awarded to D. V. Smith in the Jones case), and appellant thereafter regularly rendered this for taxes and paid the taxes thereon, but he never at any time assessed for taxes or paid any taxes on any other portion of the Williams survey. He testified, substantially, that he did not assess it for taxes because it was none of the assessor's business, and that it was his opinion that he might acquire title by limitation without the payment of taxes, and that, as others were paying taxes, he saw no reason why he should. Appellant admitted in his

242 S.W.—49

testimony on the trial, substantially, that all of his material improvements, such as his dwelling house, his barn and main field, etc., were upon his 35 acres of land that he purchased from J. W. Weaver, as before stated, and further that such possession as he had and the use made by him of the little 4-acre field and the 2-acre garden were merely incidental to his main possession and occupancy of his 35-acre tract. At this point we quote the words of appellant himself:

"I continued to live in the same house until I left there last November. I had about 15 acres in cultivation in the field around my home place all the time. Then I bought 30 acres from another man (meaning the 30 acres he bought from D. V. Smith), and cultivated it, too. I cultivated 45 or 50 acres for four years, and still used this 4 acres, too; but around my home place I had a field of about 15 acres on which I raised farm products. My barns and dwelling house, well, all of the things connected with my home there was on the 35 acres that I bought, except part of the orchard and garden and potato patch, and that was on this 2½ acres; and the 2½ acres and the 4 acres were used in connection with my home place up there, used it and cultivated it in the same way; it was just an incident to the improvements I had on my own 35 acres."

[1] We think that we have made a full and fair statement of all the material facts relative to appellant's claim of limitation in this suit, and it is our conclusion that such facts were not sufficient to authorize a verdict and judgment in his favor for 160 acres of land admittedly owned by appellee, under appellant's claim of limitation, and surely such facts were not sufficient to compel such a verdict and judgment in his favor.

Adverse possession is defined to be "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Vernon's Statutes, art. 5681. To make possession adverse, it must be such as to unmistakably indicate an assertion of claim of exclusive ownership in the occupant. Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559, and cases there cited; Bailey v. Kirby Lumber Co. (Tex. Civ. App.) 195 S. W. 221, and cases there cited. The effect of everything that was done upon the Williams survey by J. W. Weaver, acting through C. W. Smith as his tenant, prior to the judgment in the Jones case, was completely destroyed and wiped out by that judgment, both as to Weaver and Smith, and in order for Smith to acquire any portion of that survey, other than such as he acquired by purchase after that judgment, as before shown, his adverse possession thereof and claim thereof would have to commence and continue for a full period of 10 years between the rendition of that judgment and the filing of this suit against him. This is not denied by his counsel here,

but, as we understand, the proposition is admitted. Now, let us see if the facts, as we have stated them, substantially, show that he has had and held adverse possession of any portion of said survey, claimed by the appellee in this suit, for a full period of 10 years since the judgment in the Jones case and before this suit was filed. We have above shown the date of the said judgment and filing of this suit. The undisputed facts are, as we have substantially stated, that all of appellant's substantial and material improvements, such as his dwelling, barn, main field, etc., were upon the 35 acres of land which he owned by reason of his purchase from J. W. Weaver. And, while it is true that the evidence was sufficient to warrant a finding that he has continued to cultivate the little 4-acre field 53 steps distant from the J. W. Weaver south line, as fixed in the Jones judgment, yet the undisputed evidence is that he has made no change whatever in that field; and, while it is also true that he has continued to use and cultivate the little garden patch of 2 acres above mentioned, he has made no substantial or material change whatever in that tract, and the entire situation, with reference to appellee's land, has remained just as it was at the date of the judgment in the Jones suit. At that time, as we have shown, appellant was in possession of 160 acres described in a deed from one having no title to J. W. Weaver; such possession being held as the tenant of J. W. Weaver. Up to the date of that judgment it is admitted by appellant that he had asserted no claim whatever to any portion of the Stephen Williams survey in his own right, and that, had he appeared in the trial at all, he would have admitted that he claimed no title to the land, and that he was merely holding as tenant for J. W. Weaver, with the hope of acquiring for him a title to 160 acres by limitation. He admits emphatically in this record that he has not made the slightest material or substantial change in the character of his possession of any portion of appellee's land, and that the only character of possession he has had since the judgment has been the cultivation of the two little patches over the line a short distance, as above stated. He admits himself in the record, as we have quoted him, that this use by him of the little 4-acre patch and the 2-acre garden was merely incidental to his main possession and use of his own land and premises, as we have above explained; and upon the whole facts, as we have stated them, we are of the opinion that as matter of law appellant's possession and use of the 4-acre patch and 2-acre garden was not sufficient to unmistakably indicate to the true owner of the Williams survey an assertion of adverse ownership by appellant thereto, so as to give him title by limitation to 160 acres thereof. In our opinion, if appellant could acquire any portion of the Williams survey owned by

appellee, under his plea of limitation, it could not be more, upon the facts of this case, than the number of acres that were actually inclosed in the little 4-acre patch and the 2-acre garden combined. In other words, we think that the rule known as encroachment doctrine in cases of this character would have full application here. This rule or doctrine is clearly announced in the following cases: Bracken v. Jones, 63 Tex. 184; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Bailey v. Kirby Lumber Co. (Tex. Civ. App.) 195 S. W. 221; Fielder v. Houston Oil Co. (Tex. Com. App.) 208 S. W. 161.

[2, 3] But there is another reason why, in our opinion, appellant, upon the undisputed facts in this case, could not acquire title, under his plea of 10 years' limitation, to 160 acres of appellee's land, but at the most he could have only acquired so much as he had actually enclosed in the little 4-acre field and the 2-acre garden. On the trial below it was conclusively shown, in fact agreed, that immediately after the judgment in the Jones case above mentioned the plaintiffs in that suit, who recovered all of the Stephen Williams 640-acre survey except such portions as were awarded to some of the defendants, as we have above shown, one Levi Phelps was put in possession of said survey as the tenant of the plaintiffs who recovered said survey in that cause, and whose title appellee in this cause admittedly holds, and the contract of tenancy was in writing, and under it Phelps agreed to hold, as tenant, said survey for a period of five years, and as much longer as he might be permitted to do so, for the plaintiffs in said cause. Under such contract of tenancy, Phelps took actual possession, and the undisputed proof in this record shows that he has continuously remained in possession, holding under such contract of tenancy. It is a well-settled rule of law in this state that, when the true owner of land enters thereupon by actual possession, either by himself or through his tenant or agent, such entry and actual possession gives to such true owner of the land the constructive possession also, and the possession of any mere trespasser or occupant on the land is confined to so much thereof as such trespasser or occupant has actually inclosed. Therefore, so long as such true owner remains so in actual possession, limitation cannot run in favor of any trespasser or occupant on the land for any greater quantity than such trespasser or occupant has in his actual possession or inclosure. Bowles v. Brice, 66 Tex. 724, 2 S. W. 729; Puryear v. Friery, 16 Tex. Civ. App. 316, 40 S. W. 446. The written contract of tenancy between the plaintiffs in the Jones suit and Levi Phelps is not shown in full in the statement of facts in this case, and therefore we are not able to say just what the exact character and extent of that

contract was. But, if it was of that class which has been sometimes denominated or termed a "restricted lease," or "restricted contract of tenancy," the burden rested upon the appellant in this case to prove that the contract was of such character; otherwise his possession in this case was confined, as a matter of law, to his actual possession of so much of appellee's land as appellant had actually inclosed. Parker v. Cockrell (Tex. Civ. App.) 31 S. W. 221. Appellant made no attempt to show that the tenancy contract with Phelps was of the restricted class.

By neither of his assignments of error, nor by any proposition under either of them, does appellant complain here that the trial court was in error in not submitting to the jury the issue as to whether appellant acquired title by limitation to so much of the land in controversy as was embraced within the inclosures around the two small tracts above mentioned, but, as we have said above, the only contention that is here raised is, first, that he was entitled to a verdict and judgment upon the undisputed facts, as matter of law, to 160 acres of appellee's land, but, if not, then appellant was entitled to go to the jury on the issue as to whether he was entitled to 160 acres upon his plea of 10 years' limitation. In view of this situation, we do not believe that we are authorized to determine, or at least we feel that we are not required to determine, whether the trial court should have submitted to the jury any issue with reference to so much of the land as was actually inclosed by appellant, as above mentioned.

We regret that we were not favored by a brief in this case on behalf of the appellee.

It follows from the conclusions above expressed that this court is of the opinion that neither of the assignments made by appellant can be sustained, but should be overruled, and the judgment affirmed, and it will be so ordered.