## GLASS v. FRANK. (No. 7366.)

Court of Civil Appeals of Texas. Austin.
May 15, 1929.

Rehearing Denied June 5, 1929.

Geo. S. Dowell, of Austin, Harry L. Carter, of San Antonio, and Cofer & Cofer, of Austin, for appellant.

Shelton & Shelton and Pauline R. Frank, all of Austin, for appellee.

BLAIR, J. Appellee sued appellant on his note to her for $500, and to foreclose the chattel mortgage securing it on appellant's one-half interest in an oil well drilling rig and machinery, the other one-half belonging to appellee. Appellant admitted the execution of the note and mortgage, but set up a cross-action for $3,450, alleged to be due him by appellee for rentals, wages, and damages growing out of a contemporaneous contract whereby appellee rented his one-half interest in the rig and machinery. Appellee replied that appellant was entitled to a credit of $200 on the note for rentals due under the contract, but denied any further liability on the cross-action, and sued appellant for an additional loan of $50, and for one-half of a $105 truck repair bill, which appellant agreed to pay under the rental contract. Appellant answered that the truck was in the same condition as before repairs after use by appellee under the rental contract, which bound her to return it in good condition. On a trial to the court without a jury, judgment was for appellee for $300 on the note and for foreclosure of the mortgage; also for $50 for money loaned, and $52.50, one-half of the truck repair bill; and appellant was denied any recovery on his cross-action; hence this appeal.

The cross-action for damages was for the value of 2,200 feet of drill stem alleged to have been lost by appellee while she was using the rig under the rental contract. Appellee's defense was that the drill stem was lost after the termination of her rental contract and after redelivery of possession to appellant of his one-half interest; and the question raised is whether there is any evidence to sustain the findings of the trial court in her favor on these issues.

The rental contract, which was dated October 10, 1927, provided in part as follows:

"Party of the first part agrees that he will rent or lease to party of the second part his interest in said rigs to party of the second part for the drilling and deepening of the Weinert Well No. 1 in Guadalupe County, Texas. And party of the second part agrees to pay to party of the first part a rental of ten dollars ($10.00) per day for each day she so uses the rig in the operation and drilling of this work in connection with the aforesaid well. Said well is to be started on the 11th day of October, 1927 and rent is to start from said day, and notice is to be given to party of the first part J. C. Glass when the work of drilling the aforesaid well has been completed."

"The parties hereto further agree that at the termination of this lease that they will come to some agreement as to the future use of this joint property, and should they be unable to so agree that they will divide their joint property, and should they themselves be unable to agree as to the division then they will agree upon a third party who shall divide these two rigs between them."

On November 2, 1927, appellee wired appellant as follows:

"Stopped use rig on October thirty-first ready to make division of property at once Mr. J. E. Anderson has complete authority to act for me in reference to this matter. Kindly get in communication with him upon receipt of this by phone either at Gunter Hotel San Antonio or Aumont Hotel in Seguin."

The day following receipt of the telegram, negotiations were begun between appellant and Anderson, but no division of the property was made. Appellant testified that the failure to divide the property was due to appellee's refusal to do so, and that she continued to operate under her rental contract the rig and machinery until January 5, 1928, when the well was abandoned; that appellee employed him as driller some time after sending the telegram; and that the drill stem was lost in December, 1928, while appellee was so operating the rig and machinery. On the other hand, appellee testified that after sending the telegram no division of the property was made because appellant could not care for his indebtedness to her, but that she rented her one-half interest in the rig and machinery to Anderson and had nothing more to do with the drilling contract, and that Anderson and appellant took possession of the property under some character of agreement between themselves. Anderson's testimony was to the same effect. He further testified that he and appellee were partners until the date she sent the telegram in drilling the well, but that thereafter he and appellant continued the drilling under agreement that appellant was to receive $12 per day as driller and an interest in the well for the use of his one-half interest in the rig and machinery; and that the drill stem was lost while they were so operating the rig and machinery.

The evidence detailed simply presents a conflict and supports the finding and conclusions of the trial court that appellee terminated her rental contract by the telegram; that she redelivered possession of appellant's one-half interest to him; and that the drill stem was lost after termination of the contract and redelivery of possession to appellant, and therefore appellee was not responsible for the damages sought. The same evidence also precludes appellant's claim for rentals on the rig and machinery and for wages.

■ We sustain appellant's contention that the note should have been credited with $230 instead of $200 admitted by appellee and allowed by the court. The rental contract provided for a rental of $10 per day to be credited on the note beginning October 11, 1927, and until appellee notified appellant of the termination of the contract. On November 2, 1927, appellee notified appellant by telegram, which he received the following day, that she had terminated the contract. From October 11 to November 2, both inclusive, is 23 days and at a rental of $10 per day the note should have been credited with $230, and we reform the judgment so as to allow appellee to recover $270 on the note instead of $300 as allowed by the trial court. Clearly the contract did not authorize appellee to pay rental only for the days she actually used the rig and machinery as contended for by her, and as construed by the trial court.

■ We do not sustain appellant's contention that the rental contract provides for its termination only upon completion of the well being drilled. This contention is based upon a provision in the contract that appellee should give appellant notice "when the work of drilling the aforesaid well had been completed." But clearly that provision was not intended to bind appellee to use the rig until the well was completed. There is no evidence that appellant had any interest at that time in the completion of the well, but he merely rented his interest in the rig for so much per day and without any date of termination being fixed. Therefore appellee could terminate the contract at the end of any day's use of it. And appellant so construed the contract, because upon receipt of her telegram notifying him of the termination of the contract he immediately began negotiations looking to a division of the property, took possession of the property, and entered into a contract with Anderson concerning its use.

The evidence also supports the judgment for $50 paid to appellant by appellee as a loan instead of being paid as wages as contended for by appellant. The rental contract provides that appellant pay one-half the truck repair bill, and the judgment in that respect is sustained by the evidence that the truck was returned in as good condition as when received by appellee under the contract.

The court rendered judgment for $300 as balance due on the note, which we have reduced to $270 under above reformation, with foreclosure of the mortgage lien securing it, for $50 for money loaned, and $52.50, being one-half of the truck repair bill, and that order of sale issue directing the sheriff to seize and sell the mortgaged property "under execution in satisfaction of this judgment." Appellant contends the judgment should have directed that the order of sale issue as to the judgment on the note and secured by the mortgage, and that ordinary execution issue as to the balance of the judgment for $102.50. The judgment is not entirely clear in this respect, but if ambiguous on its face, it is not so when viewed in the light of the pleadings and other proceedings, which show it was intended that the order of sale only cover the judgment on the note. Richardson v. Trout (Tex. Civ. App.) 135 S. W. 677; McCoy v. Texas Power & Light Co. (Tex. Com. App.)

239 S. W. 1105; Houston Oil Co. v. Village Mills Co. (Tex. Com. App.) 241 S. W. 122; Prince v. Frost-Johnson Lbr. Co. (Tex. Civ. App.) 250 S. W. 785.

But since appellee makes some character of claim that the judgment may be satisfied entirely under the order of sale, we reform same so as to direct that the order of sale issue as to the $270 judgment on the note and secured by the mortgage, and that such sum be paid out of the proceeds of the sale, and that ordinary execution issue as to the balance of the judgment for $102.50, and as hereinabove reformed the judgment will be affirmed.

Reformed and affirmed.